United States District Court
Southern District of Texas
**ENTERED**
September 08, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| FUEL HUSKY, LLC | § | |
| D/B/A INSTAFUEL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-4277 |
| | § | |
| TOTAL ENERGY VENTURES | § | |
| INTERNATIONAL, S.A.S., N/K/A TOTAL | § | |
| CARBON NEUTRALITY VENTURES | § | |
| INTERNATIONAL, | § | |
| | § | |
| *Defendant.* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is the renewed motion to compel arbitration filed by defendant Total Energy Ventures International, S.A.S., N/K/A Total Carbon Neutrality Ventures International ("TEVI"). Dkt. 16. Having considered the motion, response, reply, and the applicable law, the court is of the opinion that the motion should be GRANTED.

### I. BACKGROUND

This case involves the alleged disclosure of proprietary information subject to multiple non-disclosure agreements. Dkt. 10. Plaintiff Fuel Husky, LLC D/B/A Instafuel ("Instafuel") is a Texas company that delivers fuel directly to vehicles in commercial fleets. *Id.* TEVI is the corporate venture subsidiary of a French multinational oil and gas corporation. *Id.* TEVI is incorporated under French law and headquartered in Courbevoie, France. Dkts. 3, 10. In 2015, TEVI met with the plaintiff regarding a potential investment in Instafuel. Dkt. 10. As part of the discussions, the parties entered into the first of two non-disclosure agreements (the "2015 NDA"). Dkts. 3, 10. Instafuel shared proprietary information, including pricing strategy, revenue models,

fueling designs, and fleet target marking, with TEVI.  *Id.*  The 2015 NDA did not contain an arbitration clause but did contain a forum selection clause that stated all disputes "arising out of or relating to" the 2015 NDA were "subject to the exclusive jurisdiction of the courts of England." Dkt. 3, Ex. A.

In 2018, the parties entered into a second non-disclosure agreement (the "2018 NDA"), prompting Instafuel to share additional information, including its pitch deck.  Dkt. 10.  The 2018 NDA contained an arbitration clause that said "[a]ny dispute arising out of, relating to, or in connection with this Agreement . . . shall be settled by a sole arbitrator in accordance with the Arbitration Rules of the International Chamber of Commerce (ICC).  The seat of arbitration shall be London, England."  Dkt. 3, Ex. B.

Instafuel alleges that in 2019 it discovered TEVI had become a strategic investor in a competitor, Booster Fuels.  Dkt. 10.  Further, Instafuel contends TEVI had divulged proprietary information, protected under the 2015 NDA and the 2018 NDA, to Booster Fuels.  *Id.*  Instafuel alleges that Booster Fuels made changes to its business model and delivery vehicles in conformity with Instafuel's business plan, that Booster Fuels used parts of Instafuel's pitch deck, and that Instafuel's customers were directly contacted by Booster Fuels.  *Id.*  Instafuel claims the disclosure of information started in 2015 and continued through 2019.  *Id.*

Despite the forum selection clause in the 2015 NDA and the arbitration clause in the 2018 NDA, Instafuel proceeded to file suit in Texas state court against TEVI, and TEVI's parent company Total S.A., asserting various tort claims including violations of the Texas Uniform Trade Secret Act.  Dkt. 1, Ex. A.  In response, TEVI removed the case to this court and filed a motion to compel arbitration, or in the alternative, to dismiss for lack of personal jurisdiction.  Dkts. 1, 3.

Instafuel then filed its amended complaint, dropping Total S.A. as a defendant, and adding a claim for fraudulent inducement.  Dkt. 10.  TEVI then filed its renewed motion to compel arbitration, or in the alternative, dismissal for lack of personal jurisdiction or *forum non conveniens*.  Dkt. 16.  This case involves an arbitration agreement between a Texas company and a French corporation; therefore, the court starts with the law applicable to international commercial arbitration.

## II. LEGAL STANDARD

There is an "emphatic federal policy" in favor of enforcing arbitration agreements.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346 (1985).  The federal policy favoring arbitration is applied "with special force in the field of international commerce."  *Id.*  International arbitration agreements are governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958.  21 U.S.T. 2517, 330 U.N.T.S. 38 (entered into force with respect to the United States, Dec. 29, 1970), implemented at 9 U.S.C. §§ 201–08.  The United States, France, and the United Kingdom are all signatories to the New York Convention.  *Id.*  The Federal Arbitration Act ("FAA") applies to international arbitration agreements to the extent that it does not conflict with the terms of the New York Convention.  9 U.S.C. § 208; *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).  Courts are empowered to compel arbitration in accordance with the terms set forth in a written arbitration agreement whether the seat of arbitration is within the United States or not.  9 U.S.C. § 206.

The New York Convention permits only a "very limited inquiry by courts when considering a motion to compel arbitration."  *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144 (5th Cir. 1985).  This "very limited inquiry" is restricted to

four questions: (1) whether there is a written agreement to arbitrate—and whether it is broad or narrow; (2) whether the seat of arbitration is in a signatory of the New York Convention; (3) whether the arbitration agreement arises out of a commercial legal relationship; and (4) whether one party is not a United States citizen. *Id.* at 1144–45.

When a party contends that a dispute is outside of the scope of a written arbitration agreement and the arbitration clause is broad, then the "action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *accord Sedco*, 767 F.2d at 1145 n.10. A broad arbitration clause "embraces all disputes between the parties having a significant relationship to the contract," and compels arbitration for disputes that "relate to" or "are connected with" a contract. *Pennzoil Expl. and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). In contrast, a narrow clause applies only to disputes "arising out of" the contract. *Id.* The Fifth Circuit's general rule is that "whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 278 (5th Cir.), *cert. denied*, 537 U.S. 1030 (2002) (citing *Sedco*, 767 F.2d at 1145).

Article II(3) of the New York Convention provides a limited exception to enforcement of arbitration agreements. 21 U.S.T. 2517. If all four questions of the limited inquiry favor arbitration, the New York Convention requires the court to compel arbitration unless "the agreement is null and void, inoperative or incapable of being performed." *Freudensprung*, 379 F.3d at 339 (quoting 21 U.S.T. 2517). "A written arbitration agreement is *prima facie* valid." *Id.* at 341. Due to the strong federal policy in favor of arbitration, courts have narrowly construed this exception. *See Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir.

4

1992); *Rhone Mediterranee Compagnia v. Lauro*, 712 F.2d 50, 53 (3d Cir.1983); *Bhandara Fam. Living Tr. v. Underwriters at Lloyd's, London*, No. H–19–968, 2020 WL 1482559, at *2 (S.D. Tex. Feb. 20, 2020) (citing *Sunkyong Eng'g & Constr. Co. v. Born, Inc.*, 149 F.3d 1174, at *6 (5th Cir. 1998) (per curiam) (unpublished)).   The "null and void" clause encompasses valid defenses under the FAA that are applicable internationally, including fraud.  9 U.S.C. §§ 2, 208; *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (holding that fraud, mistake, duress, and waiver are valid defenses but state-law principles of unconscionability are not); *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 80 (1st Cir. 2000) (holding that the "null and void" clause is limited to the breach-of-contract defenses for fraud, mistake, duress, and waiver).   A defense of fraudulent inducement requires a party to "allege and prove that the arbitration clause itself was a product of fraud."  *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 332 (5th Cir. 1987).   Any doubts concerning a defense to arbitration should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927 (1983).

Under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).   The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).   Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue."  *Dorsey v.*

5

*Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

### III. ANALYSIS

The analysis of TEVI's motion to compel arbitration is limited to the four questions permitted by the New York Convention. *Sedco*, 767 F.2d at 1144. The court will address each in turn.

### A. Written Agreement to Arbitrate

The existence of a written arbitration agreement in the 2018 NDA is not in dispute. Dkts. 3, 10, 12, 14, 16, 18. Instead, Instafuel argues that the dispute is outside of the scope of the arbitration agreement. *Id.* Further, Instafuel alleges it was fraudulently induced into signing the arbitration agreement. *Id.* Both arguments fail to defeat TEVI's motion to compel arbitration.

#### 1. Scope of the Arbitration Agreement

Instafuel argues that the dispute is outside the arbitration agreement because it involves tort claims rather than contractual claims and relates to events that predate the 2018 NDA. Dkt. 12. The arbitration clause in the 2018 NDA states that it applies to "[a]ny dispute arising out of, *relating to, or in connection with* this agreement." Dkt. 3, Ex. B (emphasis added). Use of the terms "relating to" and "in connection with" denotes a broad arbitration clause. *Pennzoil*, 139 F.3d at 1067. When the parties agree to broad arbitration clause, it is the arbitrators who must decide the question of whether the dispute is within the scope of the agreement. *Hornbeck Offshore*, 981 F.2d at 754. Therefore, Instafuel's argument that the dispute is outside of the scope of the arbitration agreement is insufficient to defeat TEVI's motion to compel arbitration.

### 2. **Fraudulent Inducement**

Instafuel claims the insertion of the arbitration clause was fraud "done with the specific intention of prohibiting Instafuel from asserting any claims against it." Dkt. 10 ¶ 54.  However, Instafuel must provide "more than labels and conclusions." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  To successfully allege fraud, Instafuel must "set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey*, 540 F.3d at 339.  The only potential allegation of a fraudulent misrepresentation is an email exchange where Instafuel requested a new non-disclosure agreement and TEVI responded with the 2018 NDA along with the message: "Sure. Same formatting attached!" Dkt. 18, Ex. A-1.

Rule 9(b) requires Instafuel to explain why this statement is fraudulent. *See Herrmann Holdings Ltd.*, 302 F.3d at 564–65.  Instafuel never does so. *See* Dkts. 10, 18.  For example, Instafuel never alleges this email misled it into thinking there was no arbitration clause or misled it as to the terms. *See id.*  To the contrary, Instafuel admits it knew of and agreed to the arbitration clause within the 2018 NDA, but laments that "had Instafuel been aware of [TEVI's] ongoing tortious behavior, it would never have agreed to an arbitration clause." Dkt. 10 ¶ 53.  Far from alleging fraud, Instafuel merely tells a story of buyer's remorse where it regrets agreeing to an arbitration clause now that it wishes to litigate.  "[A] party seeking to avoid arbitration must allege and prove that the arbitration clause itself was a product of fraud." *Nat'l Iranian Oil Co.*, 817 F.2d at 332.  Instafuel has failed to allege fraud with sufficient detail to satisfy Rule 9(b) let alone prove fraud to the extent necessary to defeat a motion to compel arbitration.

The federal policy favoring arbitration applies with special force in the field of international commercial arbitration. *Mitsubishi Motors,* 473 U.S. at 631.  Allowing unsubstantiated

declarations of fraud to satisfy the narrow exception of Article II(3) of the New York Convention would undermine this policy by creating an exception so broad it would swallow the rule. Any doubt raised by Instafuel's declaration of fraud is resolved in favor of enforcing the agreement to arbitrate. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Therefore, the first question is answered in favor of compelling arbitration.

## B. Seat of Arbitration

The New York Convention requires the agreement to seat arbitration in a signatory to the New York Convention. *Sedco*, 767 F.2d at 1145. The 2018 NDA seats arbitration in London, England. Dkt. 3, Ex. B. The United Kingdom is a signatory to the New York Convention. 21 U.S.T. 2517. Therefore, the second question is answered in favor of compelling arbitration.

## C. Commercial Legal Relationship

The New York Convention requires that the arbitration agreement arise "out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. § 202. Such a relationship may include, but is not limited to, those relationships described in 9 U.S.C. § 2. *Id.* The reach of the New York Convention is therefore broader than the Federal Arbitration Act. *Sedco*, 767 F.2d at 1146. The parties were exchanging commercial information, subject to a non-disclosure agreement, during negotiations for a potential investment. Dkts. 3, 10, 12, 16, 18. This is exactly the sort of commercial, legal relationship required by the New York Convention. Therefore, the third question is answered in favor of compelling arbitration.

## D. A Foreign Citizen

The New York Convention applies when at least one party to an arbitration agreement is not a citizen of the United States. 9 U.S.C. § 202. For purposes of the New York Convention, a

8

corporation is a citizen of the United States if it is either incorporated in the United States or has its principal place of business in the United States. *Id.* A corporation's principal place of business is its "nerve center," and typically where its main headquarters is located. *Hertz Corp. v. Friend*, 559 U.S. 77, 93, 130 S. Ct. 1181 (2010). TEVI is a corporation incorporated in France and headquartered in Courbevoie, France. Dkts. 3, 10. Thus, TEVI is not a citizen of the United States for purposes of the New York Convention. Therefore, the final question is answered in favor of compelling arbitration.

## IV. CONCLUSION

All four questions in the court's limited inquiry under the New York Convention have been answered in favor of compelling arbitration. Therefore, TEVI's motion to compel arbitration according to the terms of the arbitration agreement is GRANTED. Accordingly, this matter is STAYED and administratively closed. The parties may move to reinstate the case on the court's active docket at such time in the future as deemed appropriate. The court grants TEVI leave to renew its motions to dismiss for lack of personal jurisdiction and *forum non conveniens* at that time. A copy of the arbitrator's award shall be attached as an exhibit to any motion to reinstate.

Signed at Houston, Texas on September 8, 2021.

_____
Gray H. Miller
Senior United States District Judge

9